IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00232-WDM-MJW

ROY J. MAIN,

Plaintiff,

v.

CINDY MARTIN and
GEORGE HUBBS,

Defendants.

---

## RECOMMENDATION ON
## DEFENDANT CYNTHIA MARTIN'S MOTION FOR SUMMARY JUDGMENT
## (Docket No. 110)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate

Judge issued by District Judge Walker D. Miller on July 6, 2007 (Docket No. 20).

**Plaintiff's Allegations Against Defendant Martin**

In his Prisoner Complaint (Docket No. 3), the pro se incarcerated plaintiff alleges

deliberate indifference to a serious medical need by defendant Cindy Martin in violation

of the Eighth Amendment when she prescribed a black patch to go over the plaintiff's

bad eye and did not send plaintiff back to the Denver University Ophthalmology for

another consult with the eye surgeon for possible eye surgery, which was allegedly

mandated by four different doctors.  (See Docket No. 3 at 3, Nature of the Case, ¶¶ 2,

5, 6).  More specifically, plaintiff alleges that on June 28, 1998, he asked Martin "about

going back to D.U.O., for surgery of the left-eye.  Her reply was: 'No that I need to wear

a black patch over the left-eye to do away with the double-vision and the Headaches.' . . . This constitutes cruel and Unusual punishment, . . . denial of access to qualified Eye-Surgeon, . . . duty of care, . . . access to outside care." (Docket No. 3 at 7, ¶ 19). Almost two months later, "[o]n 8-21-1998, I seen [sic] the AVCF Eye-doctor (Cindy Martin), again about the diplopia problem, as it had grown worse, the double vision which was to the left of the head, now was in the front of the head, and was now all the time. She finally agreed to refer me to an outside specialist. As of (12-98), I had not seen the outside specialist, that she had promised me to see. . . . On 12-24-98, I finally seen the Eye specialist." (Docket No. 3 at 7, ¶ 21). Plaintiff details subsequent visits and procedures for his eye problem. See Docket No. 3 at 7-8, ¶¶ 22( Dr. Murphy on 1/28/99), 24 (Dr. Greenlee at Pueblo eye clinic on 11/4/99), 27 (neurologist Dr. Ryals on 10/8/02), 29 (follow-up with Dr. Ryals on 5/13/03), 31 (PA Havens on 10/15/2003 for headaches, Dr. Creany, and eye surgeon Dr. Baumgartner), 36 (eye surgeon Dr. Sands of Denver General Health on 11/16/04), 37 (first eye surgery done on 2/18/05 by Dr. Sands), 38-40 (subsequent visits with Dr. Sands on 2/19/05, 2/28/05, and 7/11/05), 42 (second eye surgery on 12/13/05) .

Plaintiff contends that Dr. Martin did not carry out Dr. Greenlee's orders and recommendations (Docket No. 3 at 7, ¶ 24). In addition, plaintiff contends that "[s]ince these visits to these specialists [Dr. Ryals and Greenlee] were for the eye-problem and the headaches were caused by the eye-problem, then the Eye doctor (Cindy Martin) of FCF should have read these consults and had made sure that I had received these new medications for the headaches, but again she didnt [sic] even bother to even do this simple task." (Docket No. 3 at 8, ¶ 30). In addition, plaintiff claims that on October 10,

2003, when he saw PA Havens at FCF, "PA/Havens asked the Eye-doctor (Cindy Martin), about the eye surgery, her reply was:"Mr. Main there is nothing else that can be done for your eye problem." Plaintiff, however, further states that Havens gave plaintiff more trigger point injections for the headaches, told plaintiff he would ask Dr. Creany about this eye problem, and Dr. Creany referred plaintiff to Dr. Baumgartner, an eye surgeon in Canon City. (Docket No. 3 at 8, ¶ 31).

Plaintiff's Prisoner Complaint includes the following paragraph concerning defendant Martin:

> 32. Eye-Doctor (Cindy Martin), a) There is a constitutional duty to provide needed medical care to a prisoner, because the intentional denial to a prisoner of needed medical treatment, is cruel and unusual punishment, and violates the Eighth Amendment to the Constitution of the U.S. (Denial of Eye-Surgery, when Cindy Martin knew that there was an eye surgeon just 10 miles away from the FCF facility that could do the eye surgeon [sic] needed), b) Duty of care, c) Denial of access to medicl [sic] personnel qualified to do the eye surgery, not available in prison, which would be available if I were on the outside today, d) Medical personnel who keep inmates from getting to see the right medical specialist (Dr. Greenlee and Baumgartner of Canon City), eye surgeons who specializes in diplopia problems, e) "Unnecessary and wanton infliction of pain", 1) Severe migrane [sic] headaches because of the diplopia problem causing double vision, 2) Uncomfortable double vision all the time. 3) Mental stress not knowing if I could go blind or not from this and not knowing if I will ever be able to work again at my professions, electronics and clerical work. 4) Eye problem that has kept me from sports and certain jobs. f) The serious cumulative effect from the repeated denial of care-eye surgery by the eye-doctor (Cindy Martin). C.L.: Johnson V. Bowers, 884F2d at 1056. . . .

(Docket No. 3 at 9, ¶ 32).

Plaintiff seeks compensatory, punitive, and nominal damages and attorney fees.

(Docket No. 3 at 12).

## Defendant Martin's Motion for Summary Judgment

Now before the court for a report and recommendation is defendant Cynthia

Martin's Motion for Summary Judgment (Docket No. 110).  The court has very carefully

reviewed the motion, the response thereto (114), defendant's reply (Docket No. 119),

and plaintiff's surreply (Docket No. 128).  In addition, the court has considered the

court's file and applicable case law and Federal Rules of Civil Procedure.  The court

now being fully informed makes the following findings, conclusions, and

recommendation that the motion be granted.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary

judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  "A party seeking summary judgment bears the

initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings, depositions, interrogatories, and admissions

on file together with affidavits, if any, which it believes demonstrate the absence of

genuine issues for trial."  Robertson v. Board of County Comm'rs of the County of

Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir.

1992)).  "Once a properly supported summary judgment motion is made, the opposing

party may not rest on the allegations contained in the complaint, but must respond with

specific facts showing the existence of a genuine factual issue to be tried. . . .  These

facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c),

except the mere pleadings by themselves.'"  Southway v. Central Bank of Nigeria, 149

F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).  However,

"[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. . . . The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible."' . . . Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000). See Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1268 (10th Cir. 1998).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

Defendant Martin moves for summary judgment, and in her statement of undisputed material facts, she includes the following. She is a licensed optometrist who at the time of the underlying events in this action operated Bethel Optometry, Inc., and had been retained as an independent contractor by the State of Colorado Department of Corrections ("CDOC"). Martin evaluated plaintiff's vision at the Arkansas Valley Correctional Facility on June 25, 1998. During that evaluation, Martin treated plaintiff's amblyopia with a prescription for an eye-patch to cover his left eye. Martin evaluated plaintiff again on August 21, 1998, and the notes of that visit reflect that Martin referred plaintiff "to ophthalmology for another consult." Four months after that referral, plaintiff was evaluated by ophthalmologist Jay C. Tonne on December 24, 1998. Dr. Tonne noted that "[a]s far as surgery on his esotropia, I am not enthusiastic about it since it would not totally remove his double vision, but merely increase the ROM, which might be diplopia free." Plaintiff was evaluated again in the prison eye clinic by specialist Benton F. Murphy, M.D., on January 21, 1999.

Through its Director of Utilization Management, defendant George Hobbs, the CDOC informed plaintiff in a September 15, 1999, letter that "[i]t is Dr. Tonne's recommendation that will largely determine if CDOC will authorize surgery."

Plaintiff was evaluated again at the prison eye clinic on November 4, 1999, by specialist Lynnn Greenlee, M.D. Thereafter, plaintiff was evaluated by neurologist Jarvis Ryals, M.D., on October 8, 2002, November 19, 2003, and May 13, 2003, in an effort to determine the underlying cause of the plaintiff's headaches, memory loss, and muscle weakness in plaintiff's left eye.

Plaintiff was evaluated for surgical intervention at the Rocky Mountain Eye Clinic on November 11, 2003, and the treating ophthalmologist advised another neurological evaluation before proceeding with a surgical procedure. On November 16, 2004, plaintiff was evaluated for surgical intervention by the ophthalmology clinic at Denver Health. His eye surgeries were performed on February 18 and 19, 2005, and December 13, 2005.

The facts contained in Martin's Statement of Undisputed Material Facts are undisputed by plaintiff. In his response (Docket No. 114), plaintiff did not offer anything to controvert Martin's Statement. Instead, he takes issue with Martin's actions. For example, plaintiff contends that Martin did not know how to treat his problem correctly by patching the wrong eye instead of sending him to D.U. Eye Clinic, that it should have been an eye specialist's duty to treat it instead of Martin, that there is a systematic problem in the DOC system of letting optometrists do the work of an eye specialist, and that if Martin could send him to Drs. Tonne and Greenlee, what kept her from sending him to the D.U. Eye Clinic.

Defendant Martin seeks summary judgment on the plaintiff's entire action against her on the following grounds: (1) failure to exhaust administrative remedies as mandated by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); (2) failure to state a claim against Martin because the Prisoner Complaint is premised solely on alleged violations of his Eighth Amendment right to be free from cruel and unusual punishment, but such a claim is not supported as a matter of law based on the undisputed facts; and (3) plaintiff failed to file this claim within the applicable two-year statute of limitations.

**Exhaustion of Administrative Remedies**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Defendant Martin asserts that the plaintiff has not exhausted administrative remedies as required by § 1997e(a).

The CDOC has a Grievance Procedure available to inmates which entails first a written informal grievance and then a formal three-step written grievance procedure. See Administrative Regulation No. 850-04.  In his Prisoner Complaint, plaintiff states that he did not exhaust his administrative remedies because he "was told by the Case Manager that I could not file grievance on this. AVCF."  (Docket No. 3 at 11).  On April 18, 2006, Magistrate Judge Boyd N. Boland ordered the plaintiff to show cause why his Prisoner Complaint should not be dismissed for failure to exhaust administrative remedies.  (Docket No. 13).  In his response (Docket No. 14), plaintiff mentions his June

25, 1998, visit with defendant Martin and states that on that day he "then went to Cell House 4, Case Manager for an Informal Grievance. As I wanted to grieve the eye-doctor's refusal to send me back to Denver for another consult. I also was grieving the idea of wearing a patch over the left-eye instead of fixing the problem. The case manager told me: 'stop being a pain-in-the-neck' and just wear the patch, you cannot grieve this issue." (Docket No. 14 at 2). Plaintiff then describes writing to the CDOC Director of Medical for the Arkansas Valley Area on July 31, 1998, and to his successor on August 27, 1999. The latter letter was forwarded to defendant Hubbs. Plaintiff also describes some of his medical visits. He concludes that "I hope & pray that this will explain why these grievances were not filed, and this will be enough explanation to allow this complaint to go forward." (Docket No. 14 at 5).

On May 25, 2006, Senior Judge Zita L. Weinshienk dismissed this action without prejudice for failure to exhaust administrative remedies. (Docket No. 16). In the Order and Judgment of Dismissal (Docket No. 16), Judge Weinshienk stated in pertinent part as follows:

> Mr. Main concedes that he has not filed any grievances regarding the claims he raises in this action. However, he argues that the complaint should not be dismissed for failure to exhaust administrative remedies because no administrative remedies were available to him. In support of this argument he alleges that he tried to file a grievance in June 1998 regarding Defendant Martin's failure to provide adequate medical treatment but was told by his case manager that he could not grieve the issue. Mr. Main contends that he could not file a grievance against John and Joan Doe Defendants because inmates cannot grieve facility transfers.
>
> **The Court does not agree that Mr. Main's attempt to file a grievance in 1998 excuses his failure to exhaust administrative remedies with respect to his medical treatment claim against**

**Defendants Martin and Hubbs. Even assuming Mr. Main could not have obtained a grievance form from someone other than his case manager in June 1998, the medical treatment claim against Defendants Martin and Hubbs raises many issues that had not even occurred when Mr. Main alleges he attempted to file a grievance. Mr. Main provides no explanation for his failure to file any grievances regarding the ongoing failure to provide adequate medical treatment for at least five years after he attempted to file a grievance in 1998.** He may not exhaust "administrative remedies by, in essence, failing to employ them." ***See Jernigan v. Stuchell***, 304 F.3d 1030, 1033 (10th Cir. 2002).

Therefore, the Court finds that Mr. Main has failed to exhaust administrative remedies at least for his medical treatment claim. Even assuming that he could not file a grievance regarding the effect his facility transfer had on his medical treatment, the entire complaint still must be dismissed for failure to exhaust administrative remedies because § 1997e(a) imposes a total exhaustion requirement on prisoners. ***See Ross v. County of Bernalillo***, 365 F.3d 1181, 1189 (10th Cir. 2004).

(Docket No. 16 at 3-4) (emphasis added).

Seven months after Judge Weinshienk's ruling, and while plaintiff's appeal was pending, the United States Supreme Court issued its ruling in Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910 (2007), which abrogated the two Tenth Circuit cases upon which the dismissal order was based, Steele v. Federal Bureau of Prisons, 355 F.3d 1204 (10th Cir. 2003), and Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004). As a result, the Tenth Circuit Court of Appeals reversed Judge Weinshienk's dismissal of the Prisoner Complaint and remanded the matter to the district court for further proceedings. (Docket No. 33). The court stated:

. . . The district court ordered Main to show cause why his complaint should not be dismissed for failure to exhaust administrative remedies. In response, Main conceded he had not filed any grievances regarding the claims raised in his complaint but argues no administrative remedies were available to him. The district court considered Main's arguments but dismissed his complaint without prejudice, relying on our

> prior precedents that exhaustion is a pleading requirement and that total exhaustion is required by the Prison Litigation reform Act. *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1189 (10ᵗʰ Cir. 2004), *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1209 (10ᵗʰ Cir. 2003). . . .
>
> . . . After the district court ruled in this case, the Supreme Court abrogated the precedents upon which the court relied. *Jones v. Bock*, 127 S. Ct. 910 (2007). In *Jones*, the Court held failure to exhaust is an affirmative defense and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 921, *abrogating Steele*, 355 F.3d at 1209. The Court also held the failure to exhaust one or more claims does not require the dismissal of the entire action. *Id.* at 925-26, *abrogating Ross*, 365 F.3d at 1190. Accordingly, under *Jones* the district court erred when it dismissed Main's complaint without prejudice for failure to exhaust administrative remedies. . . .

(Docket No. 33 at 3-4). This civil action was thus reinstated (Docket No. 36).

Pursuant to <u>Jones</u>, "the failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." <u>Jones</u>, 127 S. Ct. at 921. Furthermore, the Tenth Circuit subsequently held that as an affirmative defense, exhaustion must be raised and proven by the defendants. <u>Roberts v. Barreras</u>, 484 F.3d 1236, 1241 (10ᵗʰ Cir. 2007). Here, in defendant Martin's Answer (Docket No. 100), one of the defenses raised is that the "Plaintiff has failed to exhaust all available administrative remedies as mandated by 42 U.S.C. § 1997e(a)." (Docket No. 100 at 11, ¶ 64).

Martin asserts in her summary judgment motion that post-<u>Jones</u> decisions regarding administrative exhaustion requirements under § 1997e(a) support the grant of summary judgment in cases such as this. (Docket No. 110 at 9) (citing cases). Martin notes that she has properly raised the plaintiff's failure to exhaust as an affirmative defense and that plaintiff has repeatedly conceded that he failed to exhaust available administrative remedies in regard to his allegations made against Martin. Furthermore,

Martin notes that following an opportunity for plaintiff to show cause, this court has already determined that plaintiff failed to file any grievances related to his treatment by Martin since the alleged attempt in 1998, and this court held that plaintiff has shown nothing that "excuses his failure to exhaust administrative remedies with respect to his medical treatment claim against Defendants Martin and Hubbs." (Docket No. 110 at 10, citing Docket No. 16 at 3). Moreover, Martin notes that the Tenth Circuit Court of Appeals reversed the dismissal of this action only on the basis that post-Jones law does not allow *sua sponte* dismissal based on defective pleadings or dismissal of the entire action because of the failure to exhaust administrative remedies on some claims. Martin asserts that it is clear that this court retains the power to grant summary judgment on the basis that plaintiff has not exhausted administrative remedies as mandated by § 1997e(a).

> In response, plaintiff claims he
>
> was exonerated by the Appeals Court on the claim of not exhausting administrative remedies as required by the P.L.R.A.
>
> In this case-at-hand, the Plaintiff was given another chance to follow through with this law-suit and now because the Plaintiff has had his dismissal overturned by the U.S. Court of Appeals, the defendant is now grasping at straws to have this case dismissed so the plaintiff cannot prove his in court.
>
> The Plaintiff is not a lawyer and does not have all the case laws at hand like these other lawyers have, Plaintiff feels that for this court to dismiss this case on the basis that they think I don't have a case is wrong and would be unequal justice of this state.

(Docket No. 114 at 3).

Martin correctly asserts in her Reply (Docket No. 119), however, that plaintiff misunderstands the remand order from the Tenth Circuit Court of Appeals and failed to

address Martin's argument regarding exhaustion. As Martin correctly notes, the

decision in <u>Jones</u> did not relieve plaintiff of his duty to exhaust administrative remedies

prior to bringing an action. Instead, the <u>Jones</u> decision shifted the burden regarding

exhaustion from a pleading requirement to an affirmative defense. Here, Martin has

raised plaintiff's non-exhaustion as an affirmative defense. Furthermore, as Judge

Weinshienk previously found, plaintiff concedes that he has not filed any grievances

regarding the claims he raises in this action. Plaintiff argued in response to the Order to

Show Cause that the Complaint should not be dismissed for failure to exhaust

administrative remedies because no administrative remedies were available to him, and

in support of this argument, he alleged that he tried to file a grievance in June 1998

regarding Martin's failure to provide adequate medical treatment but was told by his

case manager that he could not grieve the issue. However, as found by Judge

Weinshienk, plaintiff's attempt to file a grievance in 1998 does not excuse his failure to

exhaust administrative remedies with respect to his medical treatment claim against

Martin. Furthermore, even assuming plaintiff could not have obtained a grievance form

from someone other than his case manager in June 1998, the medical treatment claim

against Martin raises issues that had not even occurred when plaintiff alleged he

attempted to file a grievance. Consequently, it is recommended that summary judgment

be granted to defendant Martin[1] based upon plaintiff's failure to exhaust as required by

---

[1]In fact, the holding in <u>Jones</u> "does not wholly foreclose the district court's ability
to raise sua sponte the exhaustion requirement." <u>Freeman v. Watkins</u>, 479 F.3d 1257,
1260 (10th Cir. 2007). "<u>Jones</u> suggests that district courts can dismiss prisoner
complaints for failure to state a claim if it is clear from the face of the complaint that the
prisoner has not exhausted his administrative remedies. . . . However, courts also are
obligated to ensure that any defects in exhaustion were not procured from the action or

§ 1997e(a).

**Statute of Limitations**

Defendant Martin also asserts that the plaintiff has failed to bring this action within the applicable statute of limitations.  Plaintiff's § 1983 claim is governed by the two-year statute of limitations contained in § 13-80-102, C.R.S.; Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994); Merrigan v. Affiliated Bankshares of Colo., Inc., 775 F. Supp. 1408, 1411-12 (D. Colo. 1991).  Federal law, rather than state law, determines when a federal claim accrues.   Newcomb v. Ingle, 827 F.2d 675, 678 (10th Cir. 1987).  "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994).  See Smith v. City of Enid By and Through Enid City Comm'n, 149 F.3d 1151, 1154 (10th Cir. 1998) ("Since the injury in a § 1983 case is the violation of a constitutional right, . . .  such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.' . . . This requires the court 'to identify the constitutional violation and locate it in time.'").  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d at 969.

---

inaction of prison officials."  Aquilar-Avellaveda v. Terrell, 478 F.3d 1223,1225 (10th Cir. 2007).  The Tenth Circuit has held, however, that "a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue."  Id. (quotation and citation omitted).  Here, plaintiff has been given an adequate opportunity to address the exhaustion issue, namely, in response to the Order to Show Cause, before the Circuit, and in response to the instant motion.

Here, the Prisoner Complaint was allegedly executed by plaintiff on January 25, 2006 (Docket No. 3 at 12). Under the prison "mailbox rule," the Complaint should be deemed "filed" at the moment of its delivery to prison authorities for forwarding to the District Court. See Houston v. Lack, 487 U.S. 266 (1988). Defendant Martin asserts that the plaintiff waited to bring this action until more seven years after he was aware of the claimed injury and has thus brought this action well outside the applicable two-year statute of limitations. Martin notes that the claims made by plaintiff against her, which allege denial of access to eye surgery, arise solely out of vision exams she performed on the plaintiff in June and August 1998. In addition, plaintiff alleges a conversation between a physician's assistant and Martin regarding plaintiff's treatment on October 15, 2003. Martin asserts that even if this alleged conversation was deemed to create a new or separate injury for the purpose of giving rise to this action, it also falls outside the limitations period. Therefore, Martin contends that plaintiff's claim against her under § 1983 is barred by the statute of limitations. This court agrees.

This court notes plaintiff's argument in response that "because [he] did not know the extent of the injuries sustained in the left-eye and how the surjuries [sic] would clear up the problems that this plaintiff was having (headaches, double-vision, poor eye-sight) until plaintiff actually had these two eye surjuries [sic] and all of these problems were gone, the plaintiff was not subject to the statute of limitations until the last surgery was completed on 7/11/05, then, and only then did the plaintiff know that because of the denial of eye-surgery for over 10 years, the plaintiff had to suffer with these problems . . . . It wasnt [sic] until after these eye-surjeries [sic] were completed that the plaintiff knew that he had been treated with deliberate medical indifference to the medical needs

of the eye surgeries and that's when he filed his claim."  "A plaintiff [however] need not know the full extent of his injuries before the statute of limitations begins to run." Industrial Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994).

Moreover, in this case, attachments to plaintiff's Prisoner Complaint make plain that he knew of his purported injuries well more than two years before he commenced this action.  For example, in a letter plaintiff purportedly wrote on July 31, 1998, which was the month after plaintiff's first visit with Martin, plaintiff complains about CDOC's refusal to do "the necessary operation on my eyes that should have been done back in the early 90's . . . ."  (Docket no. 3 at 20).  He also stated that "[t]he Eye-Examiner that was here in June said that I would have to wear a patch over my left-eye for the rest of my life to keep from having double vision, that's not fixing the problem, that's nothing more than saying they are not responsible for taking care of us only in death cases." (Docket No. 3 at 21).  Plaintiff wrote another letter on August 27, 1999, to the Director of Operations (Docket No. 3-2) in which plaintiff wrote concerning his eyes and opined that "I feel that the only conclusion is surgery."  These letters demonstrate that years before the limitations period expired, plaintiff complained to prison officials about his eye problems and his belief that the eye patch prescribed by Martin was inadequate and that he needed surgery.  Plaintiff's attempt to forestall the statute of limitations is unavailing.

**Eighth Amendment Claim**

Defendant Martin also asserts that the plaintiff has not pled sufficient facts to state a claim against her under the Eighth Amendment.  More specifically, Martin

contends that plaintiff has not alleged facts sufficient to demonstrate "deliberate indifference" and "substantial harm."

"[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" Id. However, "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. . . . The substantial harm 'may be satisfied by lifelong handicap, permanent loss, or considerable pain." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted).

"To establish deliberate indifference, a prisoner must demonstrate more than mere negligence; a negligent failure to provide adequate medical care, even one constituting medical malpractice, does not rise to the level of a constitutional violation." Alejo v. Gonzalez, 2000 WL 64317, *1 (10th Cir. Jan. 26, 2000). See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976) (A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); Glick v. Romer, 2000 WL 328127 (10th Cir. Mar. 29, 2000). Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. at 106. "The test for constitutional liability of prison officials 'involves

both an objective and a subjective component.'" Mata v. Saiz, 427 F.3d at 751. As the

Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be
> granted, [the prisoner] must set forth facts demonstrating [1] that his
> alleged medical need . . . was sufficiently serious to meet the objective
> element of the deliberate indifference test, and [2] that the Defendants'
> delay in meeting that need caused him substantial harm. . . . Finally, to
> meet the subjective element of the deliberate indifference test, [the
> prisoner] must allege facts supporting an inference [3] that Defendants
> knew about and disregarded a substantial risk of harm to his health or
> safety.

Oxendine v. Kaplan, 241 F.3d at 1276-77 (quotations omitted).

In this case, plaintiff disagrees with Martin's course of treatment, namely,

prescribing a patch over one eye rather than surgery and a consult to ophthalmology

rather than a referral to a specific provider. "[A] prisoner who merely disagrees with a

diagnosis or a prescribed course of treatment [however] does not state a constitutional

violation." See Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 811 (10th Cir.

1999). Furthermore, in plaintiff's opinion, Martin prescribed usage of the patch over the

wrong eye. "Medical malpractice [however] does not become a constitutional violation

merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106.

In addition, Martin is a licensed optometrist who merely conducted vision exams

for inmates, including the plaintiff, within the prison facilities between 1997 and 2004.

(Docket No. 110-2, Martin Aff. ¶¶ 2-5). She is not an ophthalmologist or a surgeon, and

it thus reasonably follows that she did not have the authority or responsibility to

determine the appropriateness of surgery for plaintiff's condition. It is also undisputed

that at the time of the events alleged in the Prisoner Complaint, Martin was not a prison

official or prison employee and had merely been retained by the CDOC as an

independent contractor.  Plaintiff has offered no evidence that Martin had control over scheduling or authorizing the plaintiff's surgery and thus that Martin was responsible for any purported delay in having the surgery.  In fact, the documents plaintiff himself submitted with his pleading show that there were several other medical providers, namely, ophthalmologists, a surgeon, and neurologists, who saw plaintiff after Martin suggested that plaintiff have a consult with ophthalmology.  Those specialized medical doctors did not even determine immediately that surgery was warranted.

In sum, this court finds that the facts alleged by plaintiff are insufficient to sustain a claim of deliberate indifference against optometrist Martin.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that defendant Cynthia Martin's Motion for Summary Judgment (Docket No. 110) be **granted**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of**

**both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183**

**F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir.**

**1996).**

Date:  September 16, 2008               s/ Michael J. Watanabe
       Denver, Colorado                 Michael J. Watanabe
                                        United States Magistrate Judge