IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 06-cv-00232-WDM-MJW

ROY J. MAIN,

    Plaintiff,

v.

CINDY MARTIN and
GEORGE HUBBS,

    Defendants.

## ORDER ON MAGISTRATE JUDGE RECOMMENDATIONS

Miller, J.

This matter is before me on two recommendations by Magistrate Judge Michael J. Watanabe (Docket Nos. 135, 153). The first recommendation (Docket No. 135) recommends that Plaintiff's motion for a temporary restraining order (Docket No. 132) be denied. The second recommendation (Docket No. 153) recommends that Defendant Cynthia Martin's ("Martin") motion for summary judgment (Docket No. 110) be granted. Plaintiff did not file timely objections to either recommendation and, therefore, is not entitled to *de novo* review. 28 U.S.C. § 636(b); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988). However, although technically untimely, Plaintiff filed objections to Magistrate Judge Watanabe's recommendation regarding Martin's motion for summary judgment (Docket No. 154) one business day late.[1] As they do not alter

---

[1] Pursuant to Fed. R. Civ. P. 72(b)(2), "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific written

PDF Final

my ultimate conclusion and in the interests of justice, I conclude that it is appropriate to address Plaintiff's objections in this order.  I must construe Plaintiff's pleadings liberally and hold him to a "less stringent standard" because he are proceeding *pro se*. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972))).  For the reasons set forth below, I accept Magistrate Judge Hegarty's recommendation as modified.

Background

Plaintiff initiated this action in January 2006 alleging constitutional violations relating to the medical treatment he received while incarcerated.  Plaintiff has amblyopia and diplopia[2] in his left eye which causes him to get frequent and severe migraine headaches with symptoms including dizziness, vomiting, and blurred vision.  According to the complaint, during his incarceration Plaintiff went to Denver University Ophthalmology ("DUO") in 1995 and saw an ophthalmologist who diagnosed the

---

objections to the proposed findings and recommendations."  Therefore, in this case Plaintiff's objections were required to be filed by September 30, 2008.  *See* Fed. R. Civ. P. 6(a)(2) (stating that when a time period is less than 11 days, intermittent Saturdays, Sundays, and legal holidays are excluded).  However, when service is made by mailing, as it was in this case, "3 days are added after the period would otherwise expire."  Fed. R. Civ. P. 6(d).  Therefore, to be timely, Plaintiff's objections were due on or before October 3, 2008.  Although not received by this court until October 8, 2008, the objections are dated October 6, 2008, one business day after they were due.

[2]  Although these appear to be different conditions, Plaintiff uses the terms and the term "esotropia" interchangeably.  Amblyopia is defined as "poor vision caused by abnormal development of visual areas of the brain in response to abnormal visual stimulation during early development."  Stedman's Medical Dictionary 16170 (27th ed. 2000).  Diplopia is defined as "the condition in which a single object is perceived as two objects"—essentially double vision.  *Id.* at 115680.

diplopia. The course of treatment prescribed at this time was prism glasses and further testing. Plaintiff alleges that further testing was conducted by Dr. Murphy at the State Hospital Ophthalmology Clinic, but that he did not return to DUO after the testing.

Between 1997 and 2004, Martin, a licensed optometrist, performed vision examinations for inmates housed in Colorado state prison facilities. On June 25, 1998, Martin performed a vision examination on Plaintiff. As treatment for the amblyopia, Martin prescribed an eye-patch to be worn over his left eye. Plaintiff alleges that although an eye patch can be used to treat amblyopia, the eye patch must be worn over the good eye, not the affected eye. Plaintiff alleges that he spoke to his case manager on the same day to file a grievance against Martin for her failure to refer him to DUO, but that his case manager told him that a grievance was not available for his complaint. Although Plaintiff, therefore, did not file a formal grievance against Martin, in July 1998 he sent a letter to Jerry Gasko, the Department of Corrections Director, generally complaining that he had not had his eye surgery despite his debilitating symptoms. The letter did not mention Martin by name but did complain that the "eye examiner's" prescription to wear an eye patch did not "fix the problem." (Docket No. 3 at 21, July 1998 letter attached to Complaint.) It is unclear what, if any,[3] response was made to this letter.

Martin evaluated Plaintiff again on August 21, 1998. As a result of this evaluation, Martin referred Plaintiff to "ophthalmology for another consult." Plaintiff was examined by Dr. Jay C. Tonne, M.D. on December 24, 1998, approximately four months

---

[3] I do note that Plaintiff's August 1999 letter to Don Lawson, discussed *infra*, suggests that a response was made to this letter.

after his second evaluation by Martin.  Dr. Tonne indicated that he was "not enthusiastic" about surgery because "it would not totally remove his double vision, but merely increase the ROM, which might be diplopia free."  (Docket No. 3-2, Dr. Tonne's notes attached to Complaint.)  Plaintiff was subsequently evaluated by Dr. Benton F. Murphy, M.D. on January 28, 1999.  In August 1999, Plaintiff wrote a letter to Don Lawson, Director of Operations, again complaining that he had not had eye surgery to correct the amblyopia.  *Id.* at 5, August 1999 letter attached to Complaint.  This letter does not mention Martin at all.  On behalf of Mr. Lawson, Defendant George Hubbs ("Hubbs") responded.  The letter stated that Plaintiff's condition could not be eliminated by surgery although the symptoms may be decreased and that the doctors Plaintiff had seen, in particular Dr. Tonne, did not recommend surgery at this time.  *Id.* at 6, September 1999 response letter attached to Complaint.  The letter further stated that "[m]edical providers have sole authority and responsibility for medical decisions" and that medical decisions "cannot be ordered, changed, or denied from an administrative standpoint."  *Id.* at 7.  Finally, the letter indicated that "[i]t is Doctor Tonne's recommendation that will largely determine if CDOC will authorize surgery."  *Id.*

Next, Plaintiff saw Dr. Lynn Greenlee, M.D. on November 4, 1999.  Dr. Greenlee indicated that he "suspect[ed] that [Plaintiff's] esotropia could be repaired" but indicated that he did not have the required expertise to perform surgery.  *Id.* at 2, Dr. Greenlee's notes attached to Complaint.  He suggested that the visual fields testing be redone and Plaintiff "be seen again at University Hospital for repair of his esotropia."  *Id.*  Plaintiff then saw Dr. Jarvis Ryals, M.D. on October 8, 2002 and again for a follow up on May 13, 2003 to determine whether the cause of his eye problems was neurological.  On

October 15, 2003, Plaintiff saw "PA/Havens."  PA/Havens allegedly asked Martin about the diplopia and Martin responded "Mr. Main there is nothing else that can be done for your eye problem."  (Compl. ¶ 31.)  Plaintiff alleges that PA/Havens also asked Dr. Creany about Plaintiff's condition and Dr. Creany referred Plaintiff to Dr. Baumgartner, who told Plaintiff that he would perform surgery to remedy the diplopia.  Although it was not performed by Dr. Baumgartner, Plaintiff did undergo surgery on his left eye in 2005.  Dr. Sands, after a consultation on November 16, 2004, performed the first of two surgeries on Plaintiff on February 18 and 19, 2005.  Dr. Sands performed the second surgery on December 13, 2005.  Plaintiff alleges that although his eyesight is much better following the two surgeries including no headaches and limited double vision, he has permanently lost some of his vision.

Plaintiff brought this action in January 2006 pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights.

## Discussion

1. <u>Recommendation on Plaintiff's Motion for a Temporary Restraining Order</u>

On June 10, 2008, Plaintiff moved for a preliminary injunction or a temporary restraining order "to ensure that I receive my Legal and Medical Papers that the Mail-Room Personnel has confiscated from me and to keep all future Legal and Medical Papers from being confiscated."  (Docket No. 132 ¶ 1.)  Plaintiff alleges that on May 19, 2008 he mailed interrogatories to "PA/Havens" at Fremont Correctional Facility but they were returned to him on June 3, 2003 because PA/Havens no longer worked at Fremont Correctional Facility.  He alleges that the mail room did not return the unanswered interrogatories to him.

Magistrate Judge Watanabe issued a recommendation on Plaintiff's motion on June 12, 2008 (Docket No. 135) recommending that the motion be denied.  Magistrate Judge Watanabe determined that this Court has no authority to enjoin the mail room personnel as they are not parties to this action.  He further determined that, even if this Court did have such authority, Plaintiff failed to make the required showing of necessity.  Plaintiff did not file an objection to this recommendation.

A temporary restraining order or preliminary injunction is an "extraordinary remedy", and, therefore, "the right to relief must be clear and unequivocal."  *Nova Health Sys. v. Edmondson*, 460 F.3d 1295, (10th Cir. 2006) (internal quotation marks omitted) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)).  The decision to grant injunctive relief is a matter of discretion.  *See Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (noting that the Tenth Circuit reviews denials of preliminary injunctions for abuse of discretion).  "To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."[4]  *Gen. Motors Corp.*, 500 F.3d at 1226 (citing *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)).  With respect to irreparable harm "[t]he

---

[4] The standards governing the issuance of a preliminary injunction and a temporary restraining order are very similar.  *See* Fed. R. Civ. P. 64(b) (A temporary restraining order may only enter when "specific facts in an affidavit or a verified complaint show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition.").

party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (emphasis in original) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Irreparable harm requires that the injury be "certain, great, actual 'and not theoretical.'" *Id.* (quoting *Wis. Gas Co.*, 758 F.2d at 674). "'Merely serious or substantial' harm is not irreparable harm." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)).

In this case, I agree with Magistrate Judge Watanabe that this Court does not have the authority to bind the mail room personnel with a preliminary injunction or temporary restraining order. *See* Fed. R. Civ. P. 65(d) (stating that a preliminary injunction or temporary restraining order is binding on "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)"). Furthermore, I agree with Magistrate Judge Watanabe that Plaintiff has failed to show the type of imminent danger of irreparable harm necessary to support the issuance of a preliminary injunction or temporary restraining order. *Heideman*, 348 F.3d at 1189. Plaintiff has alleged merely an isolated incident where the mail room determined that Plaintiff was not entitled to his returned mail. This single occurrence is not sufficient to demonstrate that a clear and present need for an injunction to prevent irreparable harm. *Id.* Therefore, I conclude that Magistrate Judge Watanabe's recommendation should be accepted.

2. <u>Recommendation on Defendant's Motion for Summary Judgment</u>

Martin moves for summary judgment on three grounds: (1) failure to exhaust administrative remedies; (2) failure to file the action within the statute of limitations; and (3) failure to plead sufficient facts to support an Eighth Amendment claim. Magistrate Judge Watanabe agreed with all three bases for dismissal of Plaintiff's claims against Martin.

    a. *Exhaustion of Administrative Remedies*

First, Magistrate Judge Watanabe determined that Plaintiff's claim against Martin is barred because Plaintiff did not exhaust his administrative remedies prior to filing this action. Plaintiff admits in his complaint that administrative remedies were not exhausted for these claims, but claims that his case manager told him that a grievance was not available. (Docket No. 3 at 11.) After this action was filed, Magistrate Judge Boyd N. Boland ordered Plaintiff to show cause why his case should not be dismissed for failure to exhaust administrative remedies. (Docket No. 13.) Plaintiff responded, arguing that he was told that the grievance procedures at his institution were not available to him for this claim. On May 25, 2006, Senior Judge Zita L. Weinshienk dismissed the complaint for failure to exhaust remedies (Docket No. 16). Judge Weinshienk concluded:

> The Court does not agree that Mr. Main's attempt to file a grievance in 1998 excuses his failure to exhaust administrative remedies with respect to his medical treatment claim against Defendants Martin and Hubbs. Even assuming Mr. Main could not have obtained a grievance form from someone other than his case manager in June 1998, the medical treatment claim against Defendants Martin and Hubbs raises many issues that had not even occurred when Mr. Main alleges he attempted to file a grievance. Mr. Main provides no explanation for his failure to file any grievances regarding the ongoing failure to provide adequate medical treatment for at least five years after he attempted to file a grievance in 1998. He may not exhaust "administrative remedies by, in essence, failing to employ them." *See*

*Jernigan v. Stuchell*, 304 F.3d 1030, 1033 (10th Cir. 2002).

(Docket No. 16 at 3.) Plaintiff appealed the dismissal. Based on the Supreme Court's decision in *Jones v. Bock*, 127 S. Ct. 910 (2007), decided after Judge Weinshienk's decision, the Tenth Circuit reversed and remanded for further proceedings. *Jones* determined that exhaustion of remedies was not a heightened pleading requirement as previously held by the Tenth Circuit, but rather, was an affirmative defense that must be raised by a defendant. 127 S. Ct. at 921. Upon remand and in compliance with *Jones*, Martin answered the complaint and asserted the affirmative defense of failure to exhaust administrative remedies.

Martin now moves for summary judgment based on Plaintiff's failure to exhaust administrative remedies. Magistrate Judge Watanabe concluded that summary judgment was appropriate, stating essentially the same reasons as Judge Weinshienk. (Docket No. 153 at 13.) Plaintiff objects to the recommendation arguing that he exhausted all administrative remedies that were "available" to him. He argues that because his case manager told him in June 1998 that a grievance procedure was not available to him he was not required to go through the prison's grievance procedure. He also argues that he exhausted his remedies by writing letters to the "Director of the Prisons (Jerry Gasko)"[5] and the "Director of Prison Medical (Don Lawson)" in July 1998 and August 1999. I agree with Plaintiff.

"The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that 'available' administrative remedies be exhausted prior to filing an action with respect to

---

[5] In his objection, Plaintiff calls Mr. Gasko the "Director of Prisons", but the letter itself is addressed to Jerry Gasko in his capacity as the Department of Corrections Director. (*See* Docket No. 3 at 19, July 1998 letter attached to complaint.)

prison conditions under § 1983." *Jernigan*, 304 F.3d at 1032. Under *Jones*, exhaustion of remedies must be raised as an affirmative defense and the "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d 1236, 1240–41 (10th Cir. 2007) (decided after *Jones*). When prison officials block a prisoner's access to the grievance process, the administrative remedies are not "available" to the prisoner and, therefore, do not need to be exhausted prior to initiation of a section 1983 action. *See Jernigan*, 304 F.3d at 1032 (holding that the "failure [of prison officials] to respond to a grievance within the time limits . . . renders an administrative remedy unavailable"); *see also Gonyea v. Mink*, 206 F. App'x 745, 747 (10th Cir. 2006) (unpublished)[6] ("[A]dministrative remedies may be deemed unavailable due to the obstruction of the grievance process." (citing *Jernigan*, 304 F.3d at 1032)); *Baldauf v. Garoutte*, 137 F. App'x 137, 141 (10th Cir. 2005) (unpublished) ("[T]he plain meaning of 'available' indicates that if a prisoner is hindered from utilizing the grievance procedure, then that grievance procedure is not available."); *Garcia v. Taylor*, 113 F. App'x 857, 859 (10th Cir. 2004) (unpublished) ("[R]efusing a prisoner grievance forms could raise an inference that the plaintiffs have exhausted 'available' administrative remedies.").

In this case, Plaintiff attempted to file a grievance in June 1998 after his first appointment with Martin. His case manager, however, told him that a grievance was not an available remedy for his complaint. He subsequently sent two letters to prison officials complaining that he had not been authorized to have eye surgery. One letter,

---

[6] Although the Tenth Circuit does not allow citation to unpublished opinions for precedential value, unpublished opinions may be cited for persuasive value. 10th Cir. R. 32.1.

the July 1998 letter, specifically mentioned the eye examiner's, *i.e.* Martin's, prescription of a patch rather than authorization of eye surgery. Given the denial of a grievance form and Plaintiff's letters to prison officials, I conclude that Martin has not met her burden of demonstrating that Plaintiff failed to exhaust administrative remedies.

Magistrate Judge Watanabe concluded that Plaintiff's attempt to file a grievance in 1998 did not excuse his failure to exhaust administrative remedies because, even assuming he could not have obtained the grievance form from someone other than his case manager, "the medical treatment claim against Martin raises issues that had not even occurred when [P]laintiff alleged he attempted to file a grievance." Although this statement is correct, with respect to Martin, the essence of the claim, *i.e.*, denial of a referral to DUO for eye surgery, had occurred at the time Plaintiff attempted to file a grievance. Indeed, Plaintiff's claims against Martin occurring after July 1998 are essentially that she continued to do the same thing that she did before July 1998, that is, to deny him a referral to DUO for eye surgery. It is conceivable that Plaintiff believed that a grievance would not be available for Martin's continued inaction just as it was not available for her initial inaction. I further note that Plaintiff did attempt to resolve his dispute internally as he sent two letters to prison officials complaining that he was being denied eye surgery. Although Plaintiff may well not have exhausted his administrative remedies, it is Martin's burden to prove her affirmative defense and, in this case, she has failed to do so. Martin has not presented evidence demonstrating that a grievance procedure for Martin's inaction was available to Plaintiff, that he could have obtained a grievance form from someone other than his case manager, or that the letters to prison officials are not sufficient to exhaust his administrative remedies. Therefore, I do not

agree with Magistrate Judge Watanabe that summary judgment is appropriate for failure to exhaust administrative remedies.

      b.    *Statute of Limitations*

Second, Magistrate Judge Watanabe concluded that Plaintiff did not file his action within the two year statute of limitations. Magistrate Judge Watanabe determined that Plaintiff's initiation of this action was indeed outside the relevant statute of limitations because the limitations period began to run in 1998—the time when Plaintiff became aware of the injuries giving rise to this action. Plaintiff objects to the recommendation by arguing (1) that the statute of limitations is tolled while he is incarcerated and (2) he did not know the full extent of his injuries until 2005 when Dr. Sands determined surgery was necessary. Martin responds that the statute of limitations is not tolled while the plaintiff is incarcerated in the Tenth Circuit. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). I agree with Magistrate Judge Watanabe.

"Limitations periods in § 1983 suits are to be determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules.'" *Hardin v. Straub*, 490 U.S. 536, 539 (1989). For suits brought in Colorado, the statute of limitations is "two years from the time the cause of action accrued." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law" but rather is "governed by federal rules conforming in general to common-law tort principles." *Wallace v. Kato*, 127 S. Ct. 1091, 1095 (2007) (emphasis in original). "Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete

and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal citations and quotations omitted); *accord Fogle*, 435 F.3d at 1258 ("[A] 1983 action 'accrues when facts that would support a cause of action are or should be apparent.'" (quoting *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995))). The action accrues "even though the full extent of the injury is not then known or predictable." *Wallace*, 127 S. Ct. At 1097.

In Colorado, the statute of limitations is tolled only when the person is "'a minor under eighteen years of age, a mental incompetent, or a person under other legal disability.'" *Fogle*, 435 F.3d at 1258 (quoting Colo. Rev. Stat. § 13-81-101(3)). "No Colorado court has held that an imprisoned person fell into the 'other legal disability' category." *Id.* at 1259 n.2. However, the statute of limitations may also be equitably tolled "'when flexibility is required to accomplish the goals of justice,' such as 'when plaintiffs did not timely file their claims because of extraordinary circumstances or because defendants' wrongful conduct prevented them from doing so.'" *Id.* at 1258 (quoting *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004)).

In this case, Plaintiff alleges that Martin violated his Eighth Amendment rights when she did not refer him to DUO after she performed vision evaluations on Plaintiff in June and August 1998. Although Plaintiff further asserts throughout his complaint that Martin did not follow through with other doctors' recommendations that he have surgery, the only medical interaction that Plaintiff had with Martin was in 1998. I note that Plaintiff does allege that PA/Havens discussed Plaintiff's case with Martin in 2003, but this appears to be, at most, a consultation between medical professionals. Regardless, all interactions between Plaintiff and Martin, including the potential interaction in 2003,

occurred more than two years before Plaintiff filed this action and, therefore the action was filed outside the limitations period.

Plaintiff's objections are insufficient to alter this conclusion. First, Plaintiff's argument that the statute of limitations was tolled while he was incarcerated is without merit as Colorado does not recognize incarceration as a encumbrance that tolls the statute of limitations. *See Fogle*, 435 F.3d at 1259 n.2 ("No Colorado court has held that an imprisoned person fell into the 'other legal disability' category."). With respect to Plaintiff's argument that the action did not accrue until he had the surgeries in 2005 and the full extent of his injuries could be determined, I disagree. An action accrues when the plaintiff has a complete and present cause of action. *Wallace*, 127 S. Ct. at 1095; *accord Fogle*, 435 F.3d at 1258. The action accrues "even though the full extent of the injury is not then known or predictable." *Id.* at 1097. Therefore, even though the extent of the injuries caused by an inaction on Martin's part may not have been known until 2005, the fact remains that Plaintiff's action against Martin accrued after Martin failed to refer Plaintiff to DUO for eye surgery in 1998. In fact, Plaintiff himself began complaining about Martin's inaction in 1998 as evidenced by his request to file a grievance against Martin in 1998 and his July 1998 letter to the Department of Corrections Director referencing the failure to authorize eye surgery. It is inapposite for Plaintiff to now argue that his cause of action against Martin did not occur until he was authorized to have surgery. Therefore, Magistrate Judge Watanabe was correct in determining that this action is untimely and barred by the statute of limitations.

    c.    *Eighth Amendment*

Finally, Magistrate Judge Watanabe concluded that the facts alleged by Plaintiff

are insufficient to demonstrate "deliberate indifference" by Martin as required to sustain an Eighth Amendment claim against her. Plaintiff does not object to this portion of the recommendation. I have reviewed the legal authorities relied on by Magistrate Judge Hegarty regarding the Eighth Amendment and discern no error.

"For a prisoner to show that his lack of medical attention violated his Eighth Amendment right to be free from cruel and unusual punishment, he must show 'unnecessary and wanton infliction of pain.'" *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *accord Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) ("[P]rison officials violate the Eighth Amendment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.'" (citing *Estelle*, 429 U.S. at 104)). The Tenth Circuit has described "deliberate indifference" as follows:

> Deliberate indifference' involves both an objective and a subjective component. The objective component is met if the deprivation is sufficiently serious. A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety.

*Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotations and citations omitted)). "[N]egligent diagnosis or treatment of a medical condition does not constitute a medical wrong under the Eighth Amendment . . . as medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Duffield*, 545 F.3d at 1238 (quotations and citations omitted). Additionally, to demonstrate a constitutional violation, Plaintiff must show "that there is an 'affirmative link' between each defendant and the constitutional deprivation." *Id.* (citing *Green v.*

PDF Final  15

*Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).

In this case, I agree with Magistrate Judge Watanabe that Plaintiff's claims against Martin are insufficient to demonstrate that she acted with deliberate indifference to a serious medical need. First, Plaintiff has failed to demonstrate that his medical need was sufficiently serious. Although it is undisputed that Plaintiff was diagnosed with amblyopia prior to his interactions with Martin, there is no evidence that this diagnosis resulted in a mandate for surgery at the time Martin evaluated Plaintiff. In fact, it was seven years later and after many further medical consultations that surgery was deemed medically appropriate. Second, Martin's inaction with respect to Plaintiff's amblyopia does not rise to the level of knowingly disregarding a medical risk. Martin prescribed an eye patch to treat Plaintiff's symptoms and recommended a consultation with an ophthalmologist. Even assuming that this was not the best treatment course, it was at most negligent medical care and, therefore, insufficient to constitute an Eighth Amendment violation. Finally, Plaintiff has failed to demonstrate an affirmative link between Martin's inaction and his failure to receive eye surgery until 2005. There is no evidence that Martin had the medical knowledge or authority to order eye surgery for Plaintiff. Furthermore, Martin referred Plaintiff to an ophthalmologist for further evaluation of his eye condition. Therefore, I agree with Magistrate Judge Watanabe that summary judgment in favor of Martin is appropriate.

Accordingly, it is ordered:

1. The recommendation of Magistrate Judge Watanabe (Docket No. 135), issued June 12, 2008, is accepted.
2. Plaintiff's Motion for a Preliminary Injunction and TRO (Docket No. 132) is

denied.

3. The recommendation of Magistrate Judge Watanabe (Docket No. 153), issued September 16, 2008, is accepted as modified.

4. Defendant Cynthia Martin's Motion for Summary Judgment (Docket No. 110) is granted.

5. All claims against Defendant Cynthia Martin are dismissed with prejudice.

6. All other claims remain pending.

DATED at Denver, Colorado, on January 22, 2009.
BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge